**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ndeckant@bursor.com

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL NGUYEN, individually and on behalf of all other persons similarly situated, | Case No.: 2:24-cv-01293-TLN-JDP |
| Plaintiff, | **SECOND AMENDED CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| THE LOVESAC COMPANY, | |
| Defendant. | |

Plaintiff Michael Nguyen ("Plaintiff") brings this action individually and on behalf of all others similarly situated against Defendant The Lovesac Company ("Defendant" or "Lovesac"). Plaintiff makes the following allegations pursuant to the investigation of his counsel, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      The furniture market is booming.  The revenue generated in the furniture market in the United States is expected to amount to $252.70 billion in 2024.

2.      Defendant seeks to carve out its own share of this hypercompetitive market by offering perpetual "sales" and "discounted" prices through both its online e-commerce store and its brick-and-mortar stores.

3.      It is no secret that consumers actively seek out bargains and discounted items when making purchasing decisions.  Retailers, including Defendant, are well aware of consumers' susceptibility to such perceived bargains.  Products perceived by consumers to be discounted, however, are not always actual bargains.  In an effort to give off the appearance of a bargain, Defendant intentionally misleads consumers as to the quality and value of its flagship "Sactional" sofas sold in its stores and on its website (the "Products") through its deceptive sales tactics.

4.      When consumers visit a Lovesac store, they are shown purported "sale" and "discounted" prices on Defendant's Products.[1]

5.      For example, when shopping in one of Defendant's brick and mortar stores, consumers are greeted by a Lovesac sales representative who informs them of current "sale" offerings and assists them with browsing Defendant's Products.

6.      While Defendant's Products are uniquely customizable, the represented "sale" price by Defendant relates to the type of product purchased (i.e. Sactional), rather than the individual components ordered by the customer.  For example, if Defendant represents that its Sactional couches are on "sale" for "30% off," a customer will receive this purported 30% "discount" on any Sactional they order, regardless of the individual materials they select.

---

[1] Lovesac sells its Products at the same price in its brick and mortar and e-commerce stores, and advertise the same "temporary sales" in both.

1    7.    During the browsing process, and prior to making a purchase, Plaintiff was

2    presented with a quote from one of Defendant's sales representatives that was in all material

3    respects the same as the quote shown in Figure 1:

4    **Figure 1:**



19    8.    Given the cost of Defendant's Products, such purported discounts are substantial.

20    9.    Similar representations are made on Defendant's online e-commerce store, as shown

21    in Figure 2:

**Figure 2:**



Shop Popular Configurations

2 Seats + 4 Sides    4 Seats + 5 Sides    6 Seats + 8 Sides    5 Seats + 5 Sides
$2,700.00 $1,890.00   $4,725.00 $3,307.50   $7,530.00 $5,271.00   $5,475.00 $3,832.50
Shown in Vintage Blue Rained Chenille   Shown in Beachwood Rained Chenille   Shown in Sky Grey Corded Velvet   Shown in Amethyst Corded Velvet

10.    But Defendant's purported "sales" are, in reality, anything but.  The substantial "discount" shown to consumers making an in-store purchase is deceptive and misleading because Defendant's Products are never sold at the full price represented.  Similarly, the representations on Defendant's e-commerce website are false and misleading because Defendant never actually sells its Products at the advertised strike-through prices.  Such findings were confirmed through online archives documenting Defendant's pricing and sale history.

11.    It is well established that false "reference" pricing violates state and federal law.  Nonetheless, Defendant employs inflated, fictitious reference prices for the sole purpose of increasing its sales.  Defendant engages in this deceptive practice to deceive consumers, including Plaintiff, into believing they are receiving a bargain on their purchases to induce them into making a purchase they otherwise would not have made.

12.    As a direct and proximate result of Defendant's false and misleading sales practices, Plaintiff and members of the Class, as defined herein, were induced into purchasing the Products under the false premise that they were of a higher grade, quality, or value than they actually were.

13.    Plaintiff seeks relief in this action individually, and on behalf of all purchasers of the Products for violations of the California Consumers Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq.*, Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*, False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500, *et seq.*, fraud, and unjust enrichment.  Through this action, Plaintiff seeks to enjoin Defendant from its false and deceptive

sales practices, and Plaintiff seeks to obtain actual and statutory damages, restitution, injunctive relief, and reasonable attorneys' costs and fees.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than the Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000.00 exclusive of interest and costs.

15.     This Court has personal jurisdiction over the parties because Plaintiff resides in California, is a California citizen, and submits to the jurisdiction of the Court.  Further, Defendant has, at all times relevant hereto, systematically and continually conducted business in California, including within this District, and intentionally availed itself of the benefits and privileges of the California consumer market through the promotion, marketing, and sale of its Products to residents within this District and throughout California.  Additionally, Plaintiff, while in California, purchased one of Defendant's Products at a brick-and-mortar store located within this District.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in this District and a substantial portion of the events giving rise to the cause of action occurred in this District.  Plaintiff purchased the Products and suffered his primary injury in this District.

## PARTIES

17.     Plaintiff Michael Nguyen is an individual consumer who, at all times material hereto, was a citizen of California and resident of Sacramento, California.

18.     Mr. Nguyen purchased a "Sactional" couch from one of Defendant's brick-and-mortar stores in Roseville, California (the "Product").  When Mr. Nguyen entered the store, one of Defendant's sales representatives informed him that they were offering a "temporary sale" on their Sactional couches for "25% off."  Due to the purported time limitations of the represented "sale,"

Mr. Nguyen purchased the Product[2] on or about September 2, 2022, for a "sale" price of $5,852.18, which included a purported "discount" of $1,793.75 (i.e. a "25% discount").[3]  When purchasing the Product, one of Defendant's sales representatives presented Mr. Nguyen with a quote representing the purported "25% discount" on the Sactional couch he was considering purchasing (substantially similar to the quote shown in Figure 1), and understood it as a representation and warranty by Defendant that the Product was ordinarily offered at a higher price.  Mr. Nguyen reviewed information about the Product, including Defendant's representations that the Product was being offered at a discounted "sale" price of "25% off."

19.     Mr. Nguyen relied on Defendant's false, misleading, and deceptive representations and warranties about the Product in making his decision to purchase the Product.  Accordingly, these representations and warranties were part of the basis of the bargain, in that he would not have purchased the Product, or would not have paid as much for the Product, had he known Defendant's representations were not true.  Defendant's representations about its Products are false and misleading because they induce consumers into believing that they are purchasing Products of a higher value and quality than they actually are.

20.     Had Mr. Nguyen known the truth—that the representations he relied upon in making his purchase were false, misleading, and deceptive—he would not have purchased the Product or would have paid less for the Product.  Defendant's representations are false and misleading because Defendant **never** sells its Products at the advertised "full price."  Mr. Nguyen did not receive the benefit of his bargain, because Defendant's Products were not of the represented quality and value.  Mr. Nguyen understood that his purchase involved a direct transaction between himself and Defendant, because the Product he purchased came with packaging, labeling, and other materials prepared by Defendant, including representations and warranties regarding the advertised claims.

---

[2] A receipt of Plaintiff's purchase detailing the individual selections made by Plaintiff is attached hereto as Exhibit 1.  However, Plaintiff would have received the same purported "25% discount" regardless of the individual selections her made for his Sactional.

[3] This was the same purported "discount" advertised on Defendant's Website, as shown in Exhibit 2.

21.     Defendant The Lovesac Company is a Delaware Corporation with a principal place of business located at Two Landmark Square, Suite 300 Stamford, Connecticut.  Defendant manufactures, markets, and advertises and distributes its Products throughout the United States, including California.  Defendant manufactured, marketed, and sold the Products during the relevant Class Period.  The planning and execution of the advertising, marketing, labeling, packaging, testing, and/or business operations concerning the Products were primarily or exclusively carried out by Defendant.

## FACTUAL BACKGROUND

22.     Defendant manufactures, markets, sells, and distributes its Products throughout the United States, including California, through its online e-commerce store.

### *State And Federal Pricing Guidelines*

23.     California law provides clear guidelines as to permissible and unlawful sales tactics:

> For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

> No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Bus. & Prof. Code § 17501.

24.     Additionally, California law expressly prohibits making false or misleading statements of fact "concerning reasons for, existence of, or amounts of price reductions."  *See* Cal. Civ. Code § 1770(a)(13).

25.     The Federal Trade Commission ("FTC") provides retailers with additional guidance as to permissible and unlawful sales tactics.  *See* 16 C.F.R. § 233.

26.     The FTC provides the following guidance on former price comparisons:

One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. **If, on the other hand, the former price being advertised is not bona fide but fictitious - for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction - the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.**

16 C.F.R. § 233.1(a) (emphasis added).

27.     The FTC further provides that "[t]he advertiser should be especially careful […] that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, **honestly and in good faith - and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based**." 16 CFR § 233.1(b) (emphasis added).

28.     The FTC also provides retailers with guidance as to retail price comparison:

Another commonly used form of bargain advertising is to offer goods at prices lower than those being charged by others for the same merchandise in the advertiser's trade area (the area in which he does business). This may be done either on a temporary or a permanent basis, but in either case **the advertised higher price must be based upon fact, and not be fictitious or misleading.** Whenever an advertiser represents that he is selling below the prices being charged in his area for a particular article, he should be reasonably certain that the higher price he advertises does not appreciably exceed the price at which substantial sales of the article are being made in the area - that is, a sufficient number of sales so that a consumer would consider a reduction from the price to represent a genuine bargain or saving.

16 C.F.R. § 233.2(a) (emphasis added).

29.     Essentially, federal and state law provides that sales practices should be offered in good-faith and accurately reflect the price at which comparable products are sold in the market.

***Defendant's Deceptive Sales Practices***

30.     Defendant sells its Products through its e-commerce website and in brick-and-mortar stores.

31.     In an effort to increase sales, Defendant engages in a pervasive marketing scheme to artificially inflate the prices of its Products for the sole purpose of marking them at a discounted "sale" price.  Defendant is aware that consumers typically lack material information about a product and often rely on information from sellers when making purchasing decisions, especially when a products quality or value is difficult to discern.[4]

32.     Defendant's flagship product is its "Sactional" couch, which it brands as "The World's Most Adaptable Couch."[5]

33.     Unlike traditional couches, every aspect and feature of the "Sactional" couch is customizable.  This includes the size, dimensions, cushion fill, and material of the couch.  It also includes add-ons, like storage seats, sound systems, and charging hubs.

34.     Therefore, prices can vary widely depending on any number of features that a customer selects during the purchasing process.  This inherently results in a lack of upfront transparency regarding the cost of Defendant's Products.

35.     Although the Products are uniquely customizable, Defendant's "sale" practices do not depend on the individual selections made by its customers.  Instead, all customers will receive the same "% off" regardless of the individual selections that they make.

36.     Instead of making this process more transparent, Defendant utilizes multiple methods of deceiving consumers into believing that they are receiving a bargain on the furniture they purchase from Defendant.

37.     First, when consumers visit a Lovesac store one of Defendant's sales representatives assists them in making a purchase.  Once a consumer navigates all of the different purchasing

---

[4] *Information and Consumer Behavior*, Phillip Nelson, Journal of Political Economy 78, no. 2, p. 311-312 (1970) ("Not only do consumers lack full information about the price of goods, but their information is probably even poorer about the quality variation of products simply because the latter information is more difficult to obtain.").

[5] https://www.lovesac.com/sactionals.html.

options they are presented with a quote, as shown in Figure 1. This quote includes a purported "discount" the customer is receiving on their purchase, which correlates with a "limited time sale" being offered by Defendant.

38.     Similarly, Defendant utilizes a fictitious strikethrough reference price accompanied by a purported percentage off. Next to the fictitious reference price is a lower purported "sale" price. Defendant further warrants to consumers that their purchase received a certain "% off" of their purchase, resulting in a "-$XX" to the initial subtotal, as shown in Figures:

**Figure 3:**



**Figure 4:**



39.     The representations concerning the false reference prices are substantially the same on Defendant's e-commerce website and in all of Defendant's brick-and-mortar stores.

40.     In short, Defendant's sales tactics are not offered in good faith and are made for the sole purpose of deceiving and inducing consumers into purchasing products they otherwise would not have purchased.

41.     Defendant **never** sells its Products at the advertised "discounted" or strike-through price.  Such findings were confirmed through online archives documenting Defendant's pricing and sale history for the three months prior to Plaintiff's purchase date and the three months after Plaintiff's purchase date.  Such findings were also confirmed through Defendant's pricing and sale history for the three months prior to the filing of this complaint.  This was established through the investigation of counsel, as shown in Exhibit 2.[6]

42.     Defendant's advertised false reference prices and advertised false discounts were material misrepresentations and inducements to Plaintiff's purchases.

43.     Plaintiff was harmed as a direct and proximate result of Defendant's acts and omissions.

44.     Defendant commits the same unfair and deceptive sales practices for all of its Products.

45.     Plaintiff and members of the Class are not receiving the bargain or value that Defendant has misled them to believe.

## CLASS ALLEGATIONS

46.     Class Definition: Pursuant to Federal Rule of Civil Procedure 23(a), (b)(1), (b)(3), and/or (c)(4), Plaintiff brings this action on behalf of himself and other similarly situated individuals, defined as all consumers who purchased the Products during the applicable statute of limitations period (the "Class Period) in California (the "Class").

47.     Plaintiff reserves the right to modify the class definition or add sub-classes as necessary prior to filing a motion for class certification.

---

[6] Exhibit 2 contains all available historical pricing data for the Products within the specified timeframe.

48.     The "Class Period" is the time period beginning on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling, concealment, and accrual issues, and ending on the date of entry of judgment.

49.     <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

50.     <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

      (a)     Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

      (b)     Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;

      (c)     Whether Defendant made false and/or misleading statements concerning the Products that were likely to deceive a reasonable consumer and/or the public;

      (d)     Whether Plaintiff and the Class are entitled to injunctive relief; and

      (e)     Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

51.     <u>Typicality</u>: Plaintiff is a member of the Class he seeks to represent.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Defendant's Products.  Plaintiff is entitled to relief under the same causes of action as the other Class Members.

52.     <u>Adequacy</u>: Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class members they seek to represent; their consumer fraud claims are common to all other members of the Class and they have a strong interest in vindicating their rights; he has retained counsel competent and experienced in complex class action litigation and

they intend to vigorously prosecute this action. Plaintiff has no interests which conflicts with those of the Class. The Class Members' interests will be fairly and adequately protected by Plaintiff and their counsel. Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

53.    Superiority. Class action treatment is the superior method for the fair and efficient adjudication of this controversy since individual joinder of all Class members is impracticable. Additionally, the expense and burden of individual litigation would make it difficult or impossible for the individual Class members to redress the wrongs done to them, especially given the costs and risks of litigation as compared to the benefits that may be attained. Even if the Class members could afford individualized litigation, the cost to the court system would be substantial and individual actions would also present the potential for inconsistent or contradictory judgments. By contrast, a class action presents fewer management difficulties and provides the benefit of single adjudication and comprehensive supervision by a single forum.

54.    Finally, Defendant has acted or refused to act on grounds generally applicable to the entire Class, thereby making it appropriate for this Court to grant final injunctive relief and declaratory relief with respect to the Class as a whole.

### COUNT I
### Violation of Consumers Legal Remedies Act
### ("CLRA") Civil Code §§ 1750, *et seq.*

55.    Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

56.    Plaintiff brings this claim individually and on behalf of members of the Class against Defendant.

57.    This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

58.     Plaintiff and members of the Class are consumers who purchased Defendant's Products for personal, family, or household purposes.  Accordingly, Plaintiff and members of the Class are "consumers," as the term is defined by Cal. Civ. Code § 1761(d).

59.     At all relevant times, Defendant's Products constituted "goods," as that term is defined in Cal. Civ. Code § 1761 (a).

60.     At all relevant times, Defendant was a "person," as that term is defined in Cal. Civ. Code § 1761(e).

61.     At all relevant times, Plaintiff's purchases of Defendant's Products, and the purchases of other Class members, constituted "transactions," as that term is defined in Cal. Civ. Code § 1761 (e).

62.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purposes of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

63.     The policies, acts, and practices described in this Complaint were intended to and did result in the sale of Defendant's Products to Plaintiff and the Class.  Defendant's practices, acts, policies, and course of conduct violated the CLRA § 1750 *et seq.*, as described above.

64.     Defendant advertised goods or services with intent not to sell them as advertised in violation of California Civil Code § 1770(a)(9).

65.     Defendant made false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions, in violation of California Civil Code § 1770(a)(13).

66.     Defendant violated California Civil Code §§ 1770(a)(9) and (a)(13) by representing that its Products were "on sale" or "% off," representing that consumers were receiving a "discount" and would "save $X," and displaying a strikethrough reference price.

67.     Plaintiff and members of the Class suffered injuries caused by Defendant's misrepresentations because (a) Plaintiff and members of the Class would not have purchased the Products on the same terms if they had known the true facts; (b) Plaintiff and members of the Class

paid a price premium due to the mislabeling of Defendant's Products; and (c) Defendant's Products did not have the level of quality or value as promised.

68.     Wherefore, Plaintiff seeks damages and injunctive relief for this violation of the CLRA.

**COUNT II**
**Violation of False Advertising Law**
**("FAL") Business & Professions Code §§ 17500, *et seq.***

69.     Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

70.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

71.     California's FAL, (Bus. & Prof. Code §§ 17500, *et seq.*) makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, … in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

72.     California's FAL further provides that "no price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price … within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement."  *See* Cal. Bus. & Prof. Code § 17501.

73.     Defendant violated California's FAL by representing that its Products were "on sale" or "% off," representing that consumers were receiving a "discount" and would "save $X," and displaying a strikethrough reference price.  Defendant never offered the Products at the advertised strike-through price.  Such a deceptive marketing practice misled consumers by creating a false impression that the Products were of a higher value and worth more than their actual worth.

74.     Defendant's actions in violation of § 17500 were false and misleading such that the general public was likely to be deceived.

75.     As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiff and members of the Class have suffered injury and actual out-of-pocket losses because: (a) Plaintiff and members of the Class would not have purchased the Products if they had known the true facts regarding the value and prevailing market price of the Products; (b) Plaintiff and members of the Class paid a price premium due to the misrepresentations about the Products; and (c) the Products did not have the promised quality or value.

76.     Plaintiff brings this action pursuant to § 17535 for injunctive relief to enjoin the practices described herein and to require Defendant to issue corrective and disclosures to consumers.  Plaintiff and members of the Class are therefore entitled to: (a) an order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of its deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs.

**COUNT III**
**Violation of Unfair Competition Law**
**Business & Professions Code §§ 17200, *et seq.***

77.     Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

78.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

79.     Defendant is subject to the UCL, Bus. & Prof. Code § 17200 *et seq.*  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."  The UCL also provides for injunctive relief and restitution for violations.

80.     "By proscribing any unlawful business practice, § 17200 borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable."  *Cel-*

1    *Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999)

2    (citations and internal quotation marks omitted).

3    81.    Virtually any law or regulation—federal or state, statutory, or common law—can

4    serve as a predicate for a UCL "unlawful" violation.  *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App.

5    4th 1342, 1383 (2012).

6    82.    Defendant has violated the UCL's "unlawful prong" as a result of its violations of

7    the CLRA, FAL, and federal regulations as described herein.

8    83.    Throughout the Class Period, Defendant committed acts of unfair competition, as

9    defined by § 17200, by representing that its Products were "on sale" or "% off," representing that

10   consumers were receiving a "discount" and would "save $X," and displaying a strikethrough

11   reference price.  Defendant never sold its Products at the advertised strikethrough price.  Such a

12   deceptive marketing practice misled consumers by creating a false impression that the Products

13   were of a higher value and worth more than their actual worth.

14   84.    As detailed above, the CLRA prohibits a business from "[a]dvertising goods or

15   services with intent to not sell them as advertised."  Cal. Civ. Code § 1770(a)(9).

16   85.    Further, the CLRA prohibits a business from "[m]aking false or misleading

17   statements of fact concerning reasons for, existence of, or amounts of price reductions."  Cal. Civ.

18   Code § 1770(a)(13).

19   86.    California law also expressly prohibits false reference price schemes.  Specifically,

20   the FAL provides:

21           For the purpose of this article the worth or value of any thing
             advertised is the prevailing market price, wholesale if the offer is at
22           wholesale, retail if the offer is at retail, at the time of publication of
             such advertisement in the locality wherein the advertisement is
23           published.

24
             No price shall be advertised as a former price of any advertised thing,
25           unless the alleged former price was the prevailing market price as
             above defined within three months next immediately preceding the
26           publication of the advertisement or unless the date when the alleged
             former price did prevail is clearly, exactly and conspicuously stated
27           in the advertisement.

28

Bus. & Prof. Code § 17501.

87.    Federal regulations also provide:

One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article.  If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison.  Where the former price is genuine, the bargain being advertised is a true one.  **If, on the other hand, the former price being advertised is not bona fide but fictitious - for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction - the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.  In such a case, the "reduced" price is, in reality, probably just the seller's regular price.**

16 C.F.R. § 233.1(a) (emphasis added).

88.    The FTC further provides that "[t]he advertiser should be especially careful […] that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, **honestly and in good faith - and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based**."  16 C.F.R. § 233.1(b) (emphasis added).

89.    The FTC also provides retailers with guidance as to retail price comparison:

Another commonly used form of bargain advertising is to offer goods at prices lower than those being charged by others for the same merchandise in the advertiser's trade area (the area in which he does business).  This may be done either on a temporary or a permanent basis, but in either case **the advertised higher price must be based upon fact, and not be fictitious or misleading.**  Whenever an advertiser represents that he is selling below the prices being charged in his area for a particular article, he should be reasonably certain that the higher price he advertises does not appreciably exceed the price at which substantial sales of the article are being made in the area - that is, a sufficient number of sales so that a consumer would consider a reduction from the price to represent a genuine bargain or saving.

16 C.F.R. § 233.2(a) (emphasis added).

90.     As described herein, the alleged acts and practices resulted in violations of federal and state law.

91.     Defendant's misrepresentations and other conduct, described herein, violated the "unfair prong" of the UCL because the conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendant's conduct is unfair in that the harm to Plaintiff and members of the Class arising from Defendant's conduct outweighs the utility, if any, of those practices.

92.     Defendant's practices as described herein are of no benefit to consumers, who are tricked into believing that the Products are of a higher grade, quality, worth, and/or value than they actually are. Defendant's practice of injecting misinformation into the marketplace about the value of its Products is unethical and unscrupulous, especially because consumers trust companies like Defendant to provide accurate information about their Products. Taking advantage of that trust, Defendant misrepresents the value of its Products to increase its sales. Consumers reasonably believe that Defendant is an authority on the value of furniture and therefore reasonably believe Defendant's representations that its Products are of a higher grade, quality, worth, and/or value than they actually are.

93.     Defendant's conduct described herein violated the "fraudulent" prong of the UCL by representing that the Products were of a higher grade, quality, worth, and/or value, when in fact they were not.

94.     Plaintiff and members of the Class are not sophisticated experts with independent knowledge of the value of furniture, and they acted reasonably when they purchased the Products based on their belief that Defendant's representations were true.

95.     Defendant knew or should have known, through the exercise of reasonable care, that its representations about the Products were untrue and misleading.

96.     As a direct and proximate result of these acts, consumers have been and are being harmed. Thus, Plaintiff and members of the Class are entitled to preliminary and injunctive relief.

97.     Plaintiff has no adequate remedy at law for this claim.  There is no commensurate legal remedy for voidance of Plaintiff's contract and full restitution and interest thereon. Alternatively, legal remedies available to Plaintiff are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief. *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937); *see also U.S. v. Bluitt*, 815 F. Supp. 1314, 1317 (N.D. Cal. Oct. 6, 1992) ("the 'mere existence' of a possible legal remedy is not sufficient to warrant denial of equitable relief"); *Quist v. Empire Water Co.*, 2014 Cal. 646, 643 (1928) ("The mere fact that there may be a remedy at law does not oust the jurisdiction of a court of equity. To have this effect, the remedy must also be speedy, adequate, and efficacious to the end in view … It must reach the whole mischief and secure the whole right of the party in a perfect manner at the present time and not in the future").  Furthermore:

  a.  To the extent damages are available here, damages are not equally certain as restitution because the standard that governs ordering restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages.

  b.  Damages and restitution are not necessarily the same amount. Unlike damages, restitution is not limited to the amount of money defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Plaintiff seeks such relief here.

  c.  Legal claims for damages are not equally certain as restitution because claims under the UCL and unjust enrichment entail few elements.

  d.  Plaintiff also lacks an adequate remedy at law to prevent future harm.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT IV
## Fraud

98.     Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

99.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

100.    As discussed above, Defendant failed to disclose material facts about its sales practices, including that its "sale" prices were the normal prices at which the Products were typically sold, that its strikethrough prices and purported "discounts" were fictitious, and that these deceptive sales practices operated solely for the purpose of inducing consumers to make purchases they otherwise would not have made.

101.    These omissions made by Defendant, as described above, upon which Plaintiff and members of the Class reasonably and justifiably relied, were intended to and actually did induce Plaintiff and members of the Class to purchase the Products.

102.    The fraudulent actions of Defendant caused damage to Plaintiff and members of the Class, who are entitled to damages and other legal and equitable relief as a result.

103.    Plaintiff has no adequate remedy at law for this claim.  There is no commensurate legal remedy for voidance of Plaintiff's contract and full restitution and interest thereon. Alternatively, legal remedies available to Plaintiff are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief. *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937); *see also U.S. v. Bluitt*, 815 F. Supp. 1314, 1317 (N.D. Cal. Oct. 6, 1992) ("the 'mere existence' of a possible legal remedy is not sufficient to warrant denial of equitable relief"); *Quist v. Empire Water Co.*, 2014 Cal. 646, 643 (1928) ("The mere fact that there may be a remedy at law does not oust the jurisdiction of a court of equity. To have this effect, the remedy must also be speedy, adequate, and efficacious to the end in view … It must reach the whole mischief and secure the whole right of the party in a perfect manner at the present time and not in the future").  Furthermore:

a. To the extent damages are available here, damages are not equally certain as restitution because the standard that governs ordering restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages.

b. Damages and restitution are not necessarily the same amount. Unlike damages, restitution is not limited to the amount of money defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Plaintiff seeks such relief here.

c. Legal claims for damages are not equally certain as restitution because claims under the UCL and unjust enrichment entail few elements.

d. Plaintiff also lacks an adequate remedy at law to prevent future harm.

## COUNT V
## Unjust Enrichment

104. Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

105. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

106. Plaintiff and members of the Class conferred a benefit on Defendant by purchasing the Products and by paying a price premium for them.

107. Defendant has knowledge of such benefits.

108. Defendant has been unjustly enriched in retaining the revenues derived from Class members' purchases of the Products, which retention under these circumstances is unjust and inequitable because it misrepresents that its Products are "on sale" or "% off," representing that consumers were receiving a "discount" and would "save $X," and displaying a strikethrough reference price. These misrepresentations caused injuries to Plaintiff and Class Members because

they would not have purchased the Products if the true facts regarding the value of the Products were known.

109.     Because Defendant's retention of the non-gratuitous benefit conferred on them by Plaintiff and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class Members for their unjust enrichment, as ordered by the Court.

110.     Plaintiff has no adequate remedy at law for this claim.  There is no commensurate legal remedy for voidance of Plaintiff's contract and full restitution and interest thereon. Alternatively, legal remedies available to Plaintiff are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief. *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937); *see also U.S. v. Bluitt*, 815 F. Supp. 1314, 1317 (N.D. Cal. Oct. 6, 1992) ("the 'mere existence' of a possible legal remedy is not sufficient to warrant denial of equitable relief"); *Quist v. Empire Water Co.*, 2014 Cal. 646, 643 (1928) ("The mere fact that there may be a remedy at law does not oust the jurisdiction of a court of equity. To have this effect, the remedy must also be speedy, adequate, and efficacious to the end in view … It must reach the whole mischief and secure the whole right of the party in a perfect manner at the present time and not in the future").  Furthermore:

      a.  To the extent damages are available here, damages are not equally certain as restitution because the standard that governs ordering restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages.

      b.  Damages and restitution are not necessarily the same amount. Unlike damages, restitution is not limited to the amount of money defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Plaintiff seeks such relief here.

   c. Legal claims for damages are not equally certain as restitution because claims under the UCL and unjust enrichment entail few elements.

   d. Plaintiff also lacks an adequate remedy at law to prevent future harm.

<b><u>PRAYER FOR RELIEF</u></b>

**WHEREFORE**, Plaintiff, individually and on behalf of the members of the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class, and Plaintiff's attorneys as Class Counsel to represent the Class Members;

(b) An order declaring Defendant's conduct violates the statutes referenced herein;

(c) Entering preliminary and permanent injunctive relief against Defendant, directing Defendant to correct its sales practices and to comply with consumer protection statutes;

(d) Awarding monetary damages, including treble damages;

(e) Awarding punitive damages;

(f) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(g) Granting such other and further relief as the Court may deem just and proper.

<b><u>JURY DEMAND</u></b>

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: April 18, 2025    **BURSOR & FISHER, P.A**.

          By:  */s/ Neal J. Deckant*
               Neal J. Deckant

          Neal J. Deckant (State Bar No. 322946)
          1990 North California Blvd., 9th Floor
          Walnut Creek, CA 94596
          Telephone: (925) 300-4455

Facsimile: (925) 407-2700
Email: ndeckant@bursor.com

*Attorney for Plaintiff*

**<u>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</u>**

I, Neal J. Deckant, declare as follows:

1.     I am counsel for Plaintiff, and I am a partner at Bursor & Fisher, P.A.  I make this declaration to the best of my knowledge, information, and belief of the facts stated herein.

2.     The complaint filed in this action is filed in the proper place for trial because many of the acts and transactions giving rise to this action occurred in this District, and because Plaintiff alleges that he resides in this District.

3.     Plaintiff alleges that he is a citizen of California and resident of Sacramento, California.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct, executed on April 18, 2025, at Walnut Creek, California.

*/s/ Neal J. Deckant*
Neal J. Deckant
